## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| CHRIS TEMPLETON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-02003-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| THE BISHOP OF CHARLESTON, a | ) | |
| Corporation Sole, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on defendant The Bishop of Charleston, a Corporation Sole's (the "Bishop") motion to compel, ECF No. 52. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Chris Templeton is an adult citizen and resident of Georgia. Compl. at ¶ 1. According to the complaint, Templeton was sexually abused as a child by a priest of the Diocese of Charleston, Raymond DuMouchel ("DuMouchel"). Templeton alleges the sexual abuse occurred after he traveled to South Carolina with a Georgia priest of the Diocese of Savannah, Wayland Yoder Brown ("Brown"), notorious for his own sexual abuse of children.

On July 20, 2018, Templeton filed this action against the Bishop, which he claims encompasses the various entities and persons of the Catholic Church throughout South Carolina. Id. Templeton brings negligence and gross negligence causes of actions against the Bishop, including maintaining conditions dangerous to children, negligent supervision of DuMouchel, and breach of assumed duty.

1

On September 21, 2020, the Bishop moved to compel Templeton to produce a transcript of statement made in his attorney's office and to answer questions about the circumstances of that statement.  ECF No. 52.  On September 28, 2020, Templeton responded.  ECF No. 53.  On October 5, 2020, the Bishop replied.  ECF No. 55.  The court held a hearing on the matter on October 30, 2020.  ECF No. 58.  After the hearing, the court requested supplemental briefing, which Templeton filed on November 5, 2020, ECF No. 59, and the Bishop filed on November 6, 2020, ECF No. 60.  As such, this motion has been fully briefed and is now ripe for review.

## II.  STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [and r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P 26(b).  The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case.  Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 983 (4th Cir. 1992) ("the discovery rules are given 'a broad and liberal treatment'") (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). That said, discovery is not limitless, and the court has the discretion to protect a party from "oppression" or "undue burden or expense."  FED. R. CIV. P. 26(c).

"If a party fails to make a disclosure" required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or

discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a).

Specifically, a party "may move for an order compelling an answer, designation,

production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). District courts are afforded

broad discretionary authority to resolve motions to compel. Erdmann v. Preferred

Research Inc., 852 F.2d 788, 792 (4th Cir.1988).

### III.  DISCUSSION

The Bishop moves to compel production of a March 2, 2015 recorded meeting

between Templeton and his attorneys. The Bishop's motion is based on a note entered by

Chris Templeton's mental health therapist, Linda Rochelle Ainsworth, dated March 4,

2015. See ECF No. 53-1. According to the therapist's records, Templeton told her that

he had been experiencing "one thing after another" that week. Id.  The records

specifically state,

> Mon[day] had to go back to atty getting story recorded 4 hours. Been
> drained, worn out. Then right to baseball practice til 7 pm – Long day.

Id. Counsel for Templeton confirms that such a meeting did occur on March 2, 2015, and

while no audio recording is known to exist, counsel maintains a verbatim written

transcript of the communications in their files (the "Transcript"). Templeton opposes the

Bishop's motion on two grounds. First, Templeton argues the Transcript is protected

from discovery pursuant to the attorney-client privilege. Second, Templeton argues the

Transcript is protected pursuant to the work-product doctrine and Federal Rule of Civil

Procedure 26(b)(3).

### A. Attorney-Client Privilege

Because this is a diversity action involving claims for which South Carolina law

provides the rule of decision, South Carolina privilege law applies. Fed. R. Evid. 501;

Ashcraft v. Conoco, Inc., 218 F.3d 282, 285 (4th Cir. 2000) ("[I]n a diversity action the availability of an evidentiary privilege is governed by the law of the forum state . . . ."); In re Mt. Hawley Ins. Co., 164, 829 S.E.2d 707, 710 (S.C. 2019).

Under South Carolina law, "[t]he attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." State v. Owens, 424 S.E.2d 473, 476 (S.C. 1992). The privilege consists of the following essential elements:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Tobaccoville USA, Inc. v. McMaster, 692 S.E.2d 526, 529-30 (S.C. 2010) (quoting State v. Doster, 284 S.E.2d 218, 219-20 (S.C. 1981)).

"The attorney-client privilege belongs solely to the client and can only be waived by the client." State v. Thompson, 495 S.E.2d 437 (S.C. 1998). Waiver may be either explicit or implied. See generally Floyd v. Floyd, 615 S.E.2d 465, 483 (S.C. Ct. App. 2005). "Any voluntary disclosure by a client to a third party waives the attorney-client privilege not only as to the specific communication disclosed, but also to all communications between the same attorney and the same client on the same subject." Marshall v. Marshall, 320 S.E.2d 44, 46–47 (S.C. Ct. App. 1984). While it is possible to implicitly waive the privilege, such a waiver must be "distinct and unequivocal" as is the case with an explicit waiver. Thompson, 495 S.E.2d at 439 (citing State v. Hitopoulus, 309 S.E.2d 747, 749 (S.C. 1983)).

4

In South Carolina, the party asserting the privilege has the initial burden to make a prima facie showing that the communications in question are privileged; if the initial burden is met, the party challenging the privilege must establish the communications are otherwise discoverable under an exception or waiver.  In re Mt. Hawley Ins. Co., 829 S.E.2d at 712–13.  Whether a communication is privileged is for the trial judge to decide in the light of a preliminary inquiry into all of the facts and circumstances, and this determination by the trial judge is conclusive in the absence of an abuse of discretion.  State v. Love, 271 S.E.2d 110, 112 (S.C. 1980).

Templeton argues that the attorney-client privilege applies because the communications in the Transcript were made within an attorney-client relationship, were intended to be "confidential," were made in the presence of only lawyer Charles L. Henshaw, Jr., lawyer Mark Tate, and stenographer Anne E. Lindmeier. and "related to a legal matter or matters."  ECF No. 53 at 2, 5-6.  The Bishop challenges Templeton's assertion of attorney-client privilege on two grounds.  First, the Bishop argues that the communications were not "made in confidence."  Second, the Bishop argues that, even if they were made in confidence, Templeton waived any privilege because of the presence of the stenographer and because he subsequently discussed such communications with his therapist.

The Bishop argues that the Transcript was never intended to be confidential because it was made only to assist in fashioning the allegations of the complaint and to preserve Templeton's story in light of his alleged memory deficiencies.  The court fails to see how these allegations, even if true, show that the Transcript communications were not made in confidence.  To be confidential, "the communication involved must relate to a

fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding." Marshall, 320 S.E.2d at 47 (S.C. Ct. App. 1984); see United States v. (Under Seal), 748 F.2d 871, 874 (4th Cir. 1984) ("[C]onfidential" communications are those "not intended to be disclosed to third persons other than in the course of rendering legal services to the client or transmitting the communications by reasonably necessary means."). Even if Templeton's counsel used the Transcript to prepare the complaint, such action would certainly be for the primary purpose of securing "legal services or assistance in some legal proceeding" and thus supports, rather than negates, the confidentiality of the Transcript. See Thompson, 495 S.E.2d at 439 ("The fact that [the defendant] knew Attorney intended to use Psychiatrist's recommendation to negotiate a plea agreement with the State does not overcome th[e] presumption [that]? defendant intended his statements to be confidential."). Indeed, the fact that the Transcript communications were made in counsel's office, in the presence of only his counsel and a stenographer, and within a week before filing the instant action suggests that Templeton intended to make the Transcript communications in confidence and for the purpose of obtaining legal assistance in this action. The Bishop also does not cite any authority to support its proposition that if counsel recorded Templeton's statement due to concern over his ability to recall "his story" in the future, the statement cannot be confidential. Regardless, after reviewing the Transcript in camera, the court is satisfied that Templeton made a prima facie showing that the communication was made "for the purpose of securing either an opinion on law or legal services or assistance in some legal proceeding." Marshall, 320 S.E.2d at 47.

Because Templeton made a prima facie case that the Transcript is protected by the attorney-client privilege, the burden shifts to the Bishop to establish waiver. The Bishop fails to meet this burden. The Bishop first argues that Templeton waived any attorney-client privilege by discussing the statement with his therapist. Yet the Bishop alleges only that Templeton "discussed with his therapist the fact that he had gone to his attorney's office and had recorded 'his story' over 4 hours." ECF No. 52 at 1. The Bishop has presented no evidence to suggest that Templeton discussed any substance of the Transcript with his therapist. The only evidence before the court on the matter is the therapist's records, where the therapist noted only that on "Mon[day] [Templeton] had to go back to atty [sic] getting story recorded 4 hours. Been drained, worn out." ECF No. 53-1. As such, the Bishop has not met its burden of establishing that Templeton made a distinct and unequivocal waiver by voluntarily disclosing the Transcript or its contents to his therapist. Hitopoulus, 309 S.E.2d at 749 ("Although a client may waive his attorney-client privilege, the waiver must be distinct and unequivocal.").

The Bishop next argues that Templeton waived the attorney-client privilege because he made the privileged statements in the presence of a stenographer "who did not work in the attorney's office" and who the Bishop argues was not "reasonably necessary" to render legal services. ECF No. 60 at 2. The court disagrees.

In Hitopoulus, 309 S.E.2d at 747, the court adopted a balancing test to determine whether attorney-client privilege extends to those communications between a client and a non-lawyer otherwise intended to be confidential. The factors in that test include:

> (1) the need of the attorney for the assistance of the non-lawyer to effectively represent his client, and (2) the increased potential for inaccuracy in the search for truth as the trier of fact is deprived of valuable witnesses.

7

Id.  In that case, the court held that communications between a client and a psychiatrist employed by his attorney to aid in the client's defense were protected by attorney-client privilege.  Accordingly, South Carolina courts have expressly held that "[t]he privilege may extend to agents of the attorney" retained to aid in the preparation of a case, including independent contractors.  Floyd, 615 S.E.2d at 483.

Balancing the Hitopoulus factors, the court holds that Templeton's communications with his attorney in the presence of the stenographer are covered by the attorney-client privilege.  The Bishop concedes that the stenographer was an agent of the attorney.  ECF No. 60 at 5 ("The stenographer was solely an agent of Plaintiff's attorney.").  Moreover, the court finds that the stenographer's services were necessary in the attorney's rendering of legal services.  See 8 J. Wigmore, Evidence § 2301, at 583 (J. McNaughton rev. 1961) ("It has never been questioned that the [attorney-client] privilege protects communications to the attorney's clerks and his other agents (including stenographers) for rendering his services.  The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents.").

Accordingly, the Transcript is protected by attorney-client privilege, and the court denies the motion to compel on that ground.  Because the motion must be denied on the basis of attorney-client privilege alone, the court need not determine whether the Transcript is also protected work product.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion.

8

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 8, 2020**
**Charleston, South Carolina**