**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| CHRIS TEMPLETON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:18-cv-02003-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| THE BISHOP OF CHARLESTON, a | ) | |
| Corporation Sole, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This following matter is before the court on defendant The Bishop of Charleston's (the "Bishop") motion to exclude or limit expert testimony, ECF No. 71, and plaintiff Chris Templeton's ("Templeton") motions to exclude or limit expert testimony, ECF Nos. 73 and 74. For the reasons set forth below, the court grants in part and denies in part the Bishop's motion to exclude or limit expert testimony, ECF No. 71, and denies Templeton's motions to exclude or limit expert testimony, ECF Nos. 73 and 74.

## I.  BACKGROUND

Templeton is an adult citizen and resident of Georgia who alleges that he was sexually abused as a child by a priest of the Diocese of Charleston, Raymond DuMouchel ("DuMouchel"), on property owned and operated by the Bishop. According to Templeton, the sexual abuse occurred after he traveled to South Carolina with a priest of the Diocese of Savannah, Wayland Yoder Brown ("Brown"), notorious for his molestation of children. On July 20, 2018, Templeton filed the instant action against the Bishop, the corporate entity of the Roman Catholic Church in South Carolina. Templeton alleges negligence and gross negligence causes of actions against the Bishop,

1

including maintaining conditions dangerous to children, negligent supervision of DuMouchel, and breach of assumed duty.  The Bishop maintains that Templeton filed the instant action after the expiration of the applicable statute of limitations.  Templeton claims that the action was timely filed because the statute of limitations was tolled by his "repressed memory" of DuMouchel's sexual abuse.  Specifically, Templeton claims that during a criminal investigation of Brown in 2017, Templeton recovered certain "repressed memories" of abuse by DuMouchel and Brown inside the Bishop's property.  Therefore, Templeton brings the instant action under the theory that the statute of limitations did not begin to run until 2017.  The parties have both identified experts to testify on the issue of repressed memory.

On March 1, 2021, the Bishop filed a motion to exclude expert testimony.  ECF No. 71.  On March 12, 2021, Templeton responded, ECF No. 78, and on March 29, 2021, the Bishop replied, ECF No. 86.  On March 5, 2021, Templeton filed two motions to exclude expert testimony, ECF Nos. 73 and 74, to which the Bishop responded, ECF Nos. 83 and 84, respectively.  Templeton replied with respect to his second motion to exclude.  ECF No. 88.  On June 13, 2021, the court held a telephonic hearing on the motions.  ECF No. 97.  As such, the motions are now ripe for review.

## II.  DISCUSSION

The Bishop seeks to exclude from trial the testimony of Templeton's treating psychological therapists, Shelly Ainsworth, MSW ("Ainsworth"), and Deborah Kearney, Ph.D. ("Kearney"), regarding their diagnosis of Templeton with "dissociative amnesia" and the scientific validity of such a diagnosis.  Templeton, in turn, seeks to exclude the testimony of Janine Shelby, Ph.D. ("Shelby"), James I. Hudson, M.D. ("Hudson"), and

2

Elizabeth F. Loftus, Ph.D. ("Loftus"), the Bishop's rebuttal expert witnesses on memory repression.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

District courts serve as gatekeepers for expert testimony. The court has a "special obligation" to ensure that expert testimony is relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). Under Daubert v. Merrell Dow Pharmas., Inc., the court's gatekeeping role requires that it address two questions: first, whether the expert's testimony is based on "scientific knowledge"; and second, whether the testimony "will assist the trier of fact to understand or determine a fact in issue." 509 U.S. 579, 592 (1993). The first question is answered by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." Id. at 592–93. The court should consider several nondispositive factors in determining the reliability of a particular scientific theory or technique: whether it (1) can be and has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; and (4) has attained general acceptance in the pertinent scientific community. See id. at 593–94. In considering these factors, the focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. The factors are not exclusive; what factors are relevant to the analysis "depends upon the particular

circumstances of the particular case at issue." <u>Kumho Tire</u>, 526 U.S. at 150. The second inquiry "goes primarily to relevance." <u>Daubert</u>, 509 U.S. at 591. Relevance is determined by ascertaining whether the testimony is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute. <u>Id.</u> at 593.

The proponent of expert testimony must demonstrate that the testimony satisfies these requirements. <u>Cooper v. Smith & Nephew, Inc.</u>, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance of proof."). "[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." <u>United States v. Stanley</u>, 533 F. App'x 325, 327 (4th Cir. 2013) (quoting Fed. R. Evid. 702 advisory committee's note). While Rule 702 was intended to liberalize the introduction of relevant expert evidence, courts "must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to 'be both powerful and quite misleading.'" <u>Westberry v. Gislaved Gummi AB</u>, 178 F.3d 257, 261 (4th Cir. 1999) (quoting <u>Daubert</u>, 509 U.S. at 595). With this law firmly in mind, the court proceeds to determine whether each expert's proposed testimony is admissible.

### 1. Shelly Ainsworth, MSW and Deborah Kearney, Ph.D.

The Bishop moves to exclude the expert testimony of Templeton's witnesses, Ainsworth and Kearney, regarding the theory of repressed memory syndrome. The Bishop challenges Ainsworth's qualifications because she does not have a degree in psychology and "is a licensed clinical social worker only." ECF No. 86 at 2. During the hearing, counsel for the Bishop also challenged Kearney's qualifications, explaining that

Kearney has not conducted research or studies on repressed memory. When determining if an expert's qualifications are sufficient under <u>Daubert</u>, the court should "'consider the proposed expert's full range of experience and training,' not just his professional qualifications." <u>Belk, Inc. v. Meyer Corp., U.S.</u>, 679 F.3d 146, 162 (4th Cir. 2012) (quoting <u>United States v. Pansier</u>, 576 F.3d 726, 737 (7th Cir. 2009)). "Generally, the test for exclusion is a strict one," and "[o]ne knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." <u>Thomas J. Kline, Inc. v. Lorillard, Inc.</u>, 878 F.2d 791, 799 (4th Cir. 1989) (citing <u>Martin v. Fleissner GMBH</u>, 741 F.2d 61, 64 (4th Cir. 1984)). Courts have generally found experts to lack the requisite qualifications only when the proposed expert clearly has no relevant qualifications. <u>See Thomas J. Kline, Inc.</u>, 878 F.2d at 799 (finding a proposed expert in a credit and price discrimination case not qualified because she was not an economist; had published nothing about price discrimination, credit, or antitrust; worked primarily on analyzing companies' financial health; and had no personal experience making credit decisions); <u>Zellers v. NexTech Ne., LLC</u>, 533 F. App'x 192, 197 (4th Cir. 2013) (finding a proposed expert seeking to testify to the cause of plaintiff's medical symptoms as being exposure to toxic gas not qualified because she was a neurologist with no training in the field of toxicology and her knowledge of gas toxicity simply came from articles downloaded from the Internet).

Upon review of both expert witness's curriculum vitae and expert reports, the court finds that Ainsworth and Kearney are qualified to testify as experts on the topic of repressed memory in light of their education and years of experience and training, particularly in the areas of childhood trauma and mental health. There is no requirement

that an expert have independently conducted research or published articles on a topic to be qualified to testify on that topic.  The court instead must consider the "full range" of the experts' qualifications.  Belk, 679 F.3d at 162.  Likewise, a degree specifically in psychology is not necessary. "A proffered witness who does not hold a specific academic degree may be qualified as an expert if he has some degree of specialized knowledge regarding the subject or a similar topic."  Arias v. DynCorp, 928 F. Supp. 2d 10, 15 (D.D.C. 2013); Deutsch v. Novartis Pharm. Corp., 768 F. Supp. 2d 420, 425 (E.D.N.Y. 2011) ("If the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent."). "[T]he key to qualifying [a person] as an expert is h[er] knowledge, not h[er] academic degree."  Dyson v. Winfield, 113 F. Supp. 2d 44, 50 (D.D.C. 2000).  It is clear that Ainsworth and Kearney are both knowledgeable about memory repression in connection with their occupations and related trainings, have experience on the subject matter through their treatment of victims of trauma of sexual abuse, and are familiar with publications and research on the matter.  Mindful that the standard for qualification of experts is liberal, the court finds these two experts sufficiently qualified.

According to their expert reports, Ainsworth and Kearney intend to testify that Templeton "has had dissociative amnesia."  ECF No. 79-2; 79-3.  According to Kearney, dissociative amnesia is the term preferred by treating physicians.  Based on their depositions, Ainsworth and Kearney also intend to testify regarding the scientific validity of memory repression and dissociative amnesia.  The court finds Ainsworth and

Kearney's testimony regarding memory repression and dissociative amnesia admissible. Moreover, Ainsworth and Kearney's testimony regarding whether Templeton's self-reported symptoms are consistent with those generally experienced by persons with dissociative amnesia is admissible. However, the court will not permit Ainsworth and Kearney to testify that they actually diagnosed Templeton with dissociative amnesia, as the court cannot determine based on the record whether either expert employed reliable methodology in reaching such a diagnosis. Nor will the court permit any testimony from Ainsworth or Kearney that they find Templeton's allegations of sexual abuse or his claims of repressed memory credible.

The court first finds Ainsworth and Kearney's testimony regarding the science and validity of repressed memory admissible. In her deposition, Kearney testified that "as far as people that work on the front lines, clinicians working with people that have trauma, [dissociation] is not disputed." ECF No. 98, Kearney Dep. at 19:7–9; see id. at 38:15 ("[T]here is consensus on it."). Templeton points to medical literature discussing evidence that tends to support the validity of the phenomenon of memory repression, including fMRI studies that "have shed light on the neural mechanisms involved in voluntary memory suppression." ECF No. 79 at 10 (citing Kikuchi, et. al., 22(3) J' COGNITIVE NEUROSCIENCE, Memory Repression: Brain Mechanisms underlying Dissociative Amnesia, 602–613 (2010)). Additionally, dissociative amnesia is included, and indeed discussed in depth, in the 2013 Diagnostic and Statistical Manual of the American Psychiatric Association ("APA"), the official diagnostic manual of the American Psychiatric Association (the "DSM-5"). According to the APA, "[d]ecisions to include a diagnosis in DSM–5 were based on a careful consideration of the scientific

7

advances in research underlying the disorder, as well as the collective clinical knowledge of experts in the field." "DSM–5: Frequently Asked Questions," APA, https://www.psychiatry.org/psychiatrists/practice/dsm/feedback-and-questions/frequently-asked-questions (last visited July 15, 2021). "Many health profession and educations groups [were] involved in the development and testing of DSM-5, including physicians, psychologists, social workers, nurses, counselors, epidemiologists, statisticians, neuroscientists, and neuropsychologists." APA, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (DSM-5) 6 (2013). Additionally, "patients, families, lawyers, consumer organizations, and advocacy groups [] all participated in revising DSM-5 by providing feedback on the mental disorders described [therein.]" Id. The primary purpose of the manual is to "assist trained clinicians in the diagnosis of their patient's mental disorders as part of a case formulation assessment that leads to a fully informed treatment plan for each individual." Id. at 19. Both Ainsworth and Kearney testified that the DSM-5 reflects the current consensus of mental health practitioners about whether a diagnosis is valid. See Kearney Dep. at 31:19–33:8: 38:25; ECF No. 99, Ainsworth Dep. at 94:25. The manual lists criteria used in diagnosing dissociative amnesia, including: (1) an inability to recall important autobiographical information, usually of a traumatic or stressful nature, that is inconsistent with ordinary forgetting; (2) the disturbance is not attributable to the physiological effects of a substance or neurological or other condition; (3) the symptoms cause significant distress in important areas of functioning; and (4) the disturbance is not better explained by dissociative identity disorder, posttraumatic stress disorder, or acute distress disorder. DSM–5 at 298. According to the DSM-5, dissociative amnesia is

more likely to occur with a greater number of adverse childhood experiences, including sexual abuse.

The foregoing considerations weigh in favor of admitting Ainsworth and Kearney's testimony regarding the scientific validity of memory repression. Specifically, Templeton has presented sufficient evidence that (1) the theory of repressed memory has been the subject of various studies which support its validity; (2) the theory has been subjected to peer review and publication; and (3) the theory has attained general acceptance within the relevant scientific community, namely, that of clinical psychiatrists. While repressed memory, as is true with ordinary memories, cannot be tested empirically, this factor is not dispositive. Other courts have reached the same conclusion and found expert testimony supporting the theory of repressed memory admissible. See Isely v. Capuchin Province, 877 F.Supp. 1055 (E.D. Mich. 1995); Hoult v. Hoult, 57 F.3d 1 (1st Cir. 1995); Shahzade v. Gregory, 923 F.Supp. 286 (D. Mass. 1996); Commonwealth v. Shanley, 919 N.E.2d 1254 (Mass. 2010); Keller v. Maccubbin, 2012 WL 1980417 (Del. Super. May 16, 2012) (listing decisions of Delaware courts that found expert testimony on repressed memory to be admissible to prove the applicability of a discovery rule); Logerquist v. McVey, 1 P.3d 113 (Ariz. 2000); Wilson v. Phillips, 86 Cal. Rptr.2d 204 (Cal. App. 4th Dist. 1999).

Indeed, the South Carolina Supreme Court has explicitly acknowledged the validity of the theory of dissociative amnesia, holding that "repressed memories of sexual abuse can exist and a plaintiff may attempt to recover damages when those memories are triggered and remembered. The condition is known as dissociative amnesia. A cause of action based on such a theory is valid in South Carolina." Moriarty v. Garden Sanctuary

Church of God, 534 S.E.2d 672, 675 (S.C. 2000); see Moriarty v. Garden Sanctuary

Church of God, 511 S.E.2d 699, 705 (S.C. Ct. App. 1999), aff'd, 534 S.E.2d at 672

(finding "[t]he fact that Dissociative Amnesia is included and discussed in such depth

within the DSM–IV is significant" in concluding that repressed memories of childhood

sexual abuse can exist and can be triggered and recovered). While federal law governs

the admission of expert testimony in this case and this court is not bound by South

Carolina's position on repressed memory,[1] the court finds Moriarty persuasive. The

growing number of courts acknowledging the scientific validity of memory repression

supports a conclusion that Ainsworth and Kearney's testimony on the theory is

admissible. As such, the court will permit expert testimony from Ainsworth and Kearney

regarding repressed memory and the scientific validity of that condition.

Ainsworth and Kearney not only testify on the issue of repressed memory, but

also opine that Templeton "has had dissociative amnesia" based on their treatment of

him. See ECF No. 79-2; 79-3. The Bishop argues that such testimony is unreliable

because "there is no 'method' by which they arrived at their opinions that [Templeton]

has repressed memory syndrome." ECF No. 71 at 13. The Bishop argues that the

therapists did no more than believe what Templeton told them: neither therapist

conducted any tests or differential diagnosis to analyze Templeton's repressed memory,

and neither treated Templeton when he allegedly recovered his repressed memory of

---

[1] Templeton argues that a finding that the theory of memory repression is not legally reliable would violate the Rules Enabling Act, 28 U.S.C. § 2072. Under the Rules Enabling Act, the Federal Rules of Evidence "shall not abridge, enlarge or modify any substantive right" conferred by a State. 28 U.S.C. § 2072. Because the court finds that the theory of memory repression is sufficiently reliable under Daubert, it need not decide whether reaching the opposite conclusion would violate the Rules Enabling Act.

sexual abuse by Brown or DuMouchel.  The court shares the Bishop's concern regarding both experts' "diagnosis" of Templeton with dissociative amnesia.

Ainsworth purports to diagnose Templeton with dissociative amnesia "based on [her] personal treatment of him."  ECF No. 79-3.  However, the record contains no explanation as to how she reached that diagnosis, and Templeton does not argue that Ainsworth applied any reliable methodology in reaching that diagnosis.[2]  Ainsworth does not claim to have performed any tests, conducted a differential diagnosis, applied the DSM-5, or otherwise used any reliable methodology in "diagnosing" Templeton.  In her deposition, Ainsworth generally references the DSM-5 and its inclusion of dissociative amnesia.  She likewise explains how she applied the DSM-5 criteria in diagnosing Templeton with post-traumatic stress disorder ("PTSD").  Yet Ainsworth fails to do the same with respect to her dissociative amnesia "diagnosis."  Nowhere in her expert report or deposition does Ainsworth aver that she applied the diagnostic criteria in the DSM-5 for dissociative amnesia to Templeton's case.  And it is not apparent from her testimony that she did, in fact, apply that criteria.  Ainsworth simply says she based her dissociative amnesia diagnosis on what Templeton told her.  See Ainsworth Dep. at 59:16–60:1 (explaining that she did not rule out any other causes for Templeton's memory issues and believed that it was "clear[ly]" trauma related "based on what he told [her]"); 54:22–55:7 (explaining that her knowledge of Templeton's repressed and recovered memory is simply "what he told [her]"); 39:22–40:6 (explaining that, based on what Templeton told

_____

[2] The extent of Templeton's argument regarding Ainsworth's diagnostic methodology appears to be that she has treated clients with memory loss conditions similar Templeton's and is familiar with the relevant literature.  This argument goes to Ainsworth's qualifications and fails to show how Ainsworth's purported diagnosis is the product of reliable principles and methods.

her, his memories of abuse came back while hearing other people's stories). The court

acknowledges that reliance on self-reporting, to an extent, is common in the fields of

psychology and psychiatry. Indeed, it is arguably the only way to satisfy the first criteria

of dissociative amnesia, an inability to recall certain autobiographical information.

Moreover, Ainsworth's acceptance of Templeton's story made practical sense for her

purposes as a clinical social worker because helping Templeton cope with his present-day

pain and struggles was her primary objective. However, Templeton fails to argue, much

less show by a preponderance of proof, that relying solely on self-reports of memory loss

and recovery is a reliable method of diagnosing a patient with dissociative amnesia or

generally accepted in the medical field. Templeton, as proponent of Ainsworth's expert

testimony, bears the burden of showing that her "diagnosis" is reliable. See Cooper, 259

F.3d at 199. By neglecting to argue or set forth the methodology Ainsworth used in

reaching her dissociative amnesia "diagnosis," Templeton has failed to shoulder that

burden.

      The court further takes issue with Ainsworth's apparent failure to consider

alternative causes of Templeton's self-reported memory loss. When asked if she ruled

out any other causes of Templeton's memory issues, Ainsworth replies with a definitive

"No." Ainsworth Dep. 59:16–24. Not only is consideration of other causes of memory

loss part of the DSM-5 criteria for diagnosis, but an utter failure to consider potential

alternative causes may also render an expert's testimony inadmissible under Daubert.

See Westberry, 178 F.3d at 265 (requiring expert to provide some explanation for

discounting a proposed alternative cause). Still, an expert need not "rule out every

potential cause." In re Fosamax Prod. Liab. Litig., 647 F. Supp. 2d 265, 278 (S.D.N.Y.

2009) (quoting Israel v. Spring Indus., 2006 WL 3196956, at *5 (E.D.N.Y. Nov. 3,

2006). Daubert simply requires that an expert "address obvious alternative causes and

provide a reasonable explanation for dismissing specific alternate factors identified by the

defendant." Id. (quoting Israel, 2006 WL 3196956, at *5). If an expert meets this

threshold, then the failure to investigate potential alternative causes simply affects the

weight of the evidence. Westberry, 178 F.3d at 265 ("The alternative causes suggested

by a defendant 'affect the weight that the jury should give the expert's testimony and not

the admissibility of that testimony,' unless the expert can offer 'no explanation for why

she has concluded [an alternative cause offered by the opposing party] was not the sole

cause.'") (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 156–57 (3d Cir. 1999)).

Ainsworth admits that she did not consider, and in fact, is not trained to consider

the effects that Templeton's substance abuse may have had on his memory or to rule

substance abuse out as a cause of his memory issues. When asked, "What effect does

long-term use of—abuse of alcohol or cocaine have on memory?", Ainsworth answered

that "I don't believe that I am—that's in my scope of practice to answer. I could guess

that it might have some impact . . . ." Ainsworth Dep. 34:25–35:3. This response

directly undermines Ainsworth's ability to reliably apply the second criteria in DSM-5,

that the "disturbance is not attributable to the physiological effects of a substance or

neurological or other condition." DSM-5 at 298. Indeed, Ainsworth clarifies that, as a

clinical social worker, she does not have the necessary medical training to explain the

physiological mechanism by which Templeton repressed his memories. Ainsworth Dep.

17:22–25; 45:16–21 ("[Y]ou are giving me credit for medical training that I don't have,

so I can't answer physiologically."). Similarly, Ainsworth diagnoses Templeton with

PTSD yet does not address whether she determined if Templeton's memory loss "is not better explained by dissociative identity disorder, posttraumatic stress disorder, or acute distress disorder," the fourth criteria in DSM-5. Therefore, the court also finds Ainsworth's "diagnosis" unreliable based on her failure to provide any explanation in the record for dismissing obvious alternative causes of Templeton's memory issues.

Because Templeton cannot show that Ainsworth's "diagnosis" was performed "to the professional level expected in h[er] field," the court does not find it reliable. Best v. Lowe's Home Centers, Inc., 563 F.3d 171, 183 (6th Cir. 2009) (citing Kumho Tire, 526 U.S. at 152). Therefore, the court must exercise its role as gatekeeper and exclude such testimony. The court clarifies that, in addition to testifying about repressed memory and her opinions as to its scientific validity, Ainsworth may testify about her treatment of Templeton and opine that Templeton's conduct and behavior, as she observed it, and the symptoms he reported to her are consistent with people who have experienced or suffered from abuse and/or dissociative amnesia. Ainsworth simply may not testify that she diagnosed him with dissociative amnesia or that he "has had" dissociative amnesia.

The court similarly limits Kearney's testimony. Based on her deposition testimony, Kearney does not personally diagnose Templeton with dissociative amnesia based on the elements of DSM-5 or any other methodology. Rather, she notes that reports of other therapists show Templeton's dissociative amnesia diagnosis. Specifically, when Kearney is asked to walk through how she reached the diagnosis of dissociative amnesia, she testifies, "Well, I actually didn't give Chris that diagnosis. And I didn't need to—by the time I saw Chris, he had his memories. So I didn't—I did not—I was not his treating provider when he had the dissociative amnesia. So I'm relying on—

14

on other therapists' reports." Kearney Dep. 54:23-55:5. Again, when asked if she diagnosed Templeton with the condition, Kearney answers, "He already had recovered that by the time that I met with him. So I have the reports of the other therapists, his credible report, as well as my observation that he does have dissociative—other—other aspects of dissociation besides the dissociative amnesia he had previously, yes." Kearney Dep. 87:17–88:2. Based on this testimony, it is clear to the court that Kearney did not diagnose Templeton with dissociative amnesia herself and can only testify that other therapists' reports indicate that he had the diagnosis. In this regard, Kearney's testimony is not helpful to a jury. A jury may be able to review reports from other therapists and evaluate the conclusions of these providers for themselves. Kearney's repackaging of other therapists' diagnoses and presenting them as her own creates an impermissible risk of misleading the jury. Therefore, Kearney may testify regarding her treatment of Templeton and opine that Templeton's conduct and behavior, as she observed it, and the symptoms he reported to her are consistent with people who have experienced or suffered from abuse and/or dissociative amnesia. She may further testify that, in treating Templeton, she reviewed the reports of prior treating therapists. Kearney may not, however, testify that she diagnosed him with dissociative amnesia or that he "has had" dissociative amnesia.

The court next determines that Ainsworth and Kearney's expert testimony, as limited above, is relevant. The Bishop does not dispute the point, and rightfully so. There are factual disputes as to whether Templeton was sexually abused by DuMouchel, whether he repressed his memory of that abuse such that the statute of limitations was tolled, and the extent to which he suffered damages, if any, from that abuse. Both

15

experts' testimony on the science of dissociative amnesia and their treatment of

Templeton for the condition will assist the jury in resolving those factual disputes.

Therefore, the court finds Ainsworth and Kearney's testimony relevant.

Beyond the aforementioned <u>Daubert</u> considerations, the Bishop argues that

Ainsworth and Kearney's testimony is not admissible because of the risk that these

experts will improperly "vouch" for Templeton's credibility and thus engage in

impermissible bolstering. ECF No. 71 at 17. "Absent unusual circumstances, expert

medical testimony concerning the truthfulness or credibility of a witness is

inadmissible . . . because it invades the jury's province to make credibility

determinations." <u>United States v. Beasley</u>, 72 F.3d 1518, 1528 (11th Cir. 1996); <u>see</u>

<u>United States v. Adams</u>, 271 F.3d 1236, 1245 (10th Cir. 2001) ("[T]he credibility of

witnesses is generally not an appropriate subject for expert testimony."); <u>United States v.</u>

<u>Whitted</u>, 11 F.3d 782, 785–86 (8th Cir. 1993) ("A doctor . . . cannot pass judgment on the

alleged victim's truthfulness in the guise of a medical opinion, because it is the jury's

function to decide credibility."); <u>United States v. Jannotti</u>, 673 F.2d 578, 598 (3d Cir.

1982) (en banc) ("Credibility determinations are for the jury."); <u>Garcia v. GEICO Gen.</u>

<u>Ins. Co.</u>, 807 F.3d 1228, 1234 (11th Cir. 2015) ("A court may exclude evidence

as improper bolstering when the purpose of the evidence is to vouch for a witness's

credibility." ). During the hearing, counsel for Templeton agreed that Ainsworth and

Kearney should not be permitted to bolster Templeton's credibility. The court finds that

any testimony from Ainsworth and Kearney opining on the truthfulness of Templeton's

claims of sexual abuse, repressed memory, or his recovery of that repressed memory is

improper bolstering.  The extent to which Ainsworth and Kearney's testimony

encroaches on this limitation will be managed at trial by the court upon proper objection.

### 2.  Janine Shelby, Ph.D.

Templeton moves to exclude or limit testimony of the Bishop's expert witness

Shelby.  Shelby's expert report

> addresses characteristics of trauma-related disorders, trauma-related
> diagnoses, evidence-based therapy methods for mental disorders, issues
> related to the phenomenon referred to as 'repressed memory,' and the
> possible ramifications of using specific therapeutic methods in forensic
> contexts and/or when individuals report memories of sexual abuse that
> surface after a prolonged period of amnesia for traumatic events.

ECF No. 73-2 at 15–16.  In other words, Shelby opines that the therapeutic techniques

used with Templeton, his drug use, and other "external forces" affected his ability to

recall certain events and may have implanted false memories.  The court denies

Templeton's motion to exclude Shelby's testimony on both procedural and substantive

grounds.

Procedurally, the court denies Templeton's motion as untimely.  The operative

scheduling order provides that "all Daubert motions shall be filed on or before March 1,

2021."  ECF No. 57 at 1.  Templeton filed his motions to exclude expert testimony on

March 5, 2021, meaning that his motions are untimely.  Under Federal Rule of Civil

Procedure 16(b), a scheduling order "may be modified only for good cause and with the

judge's consent."  Both in his briefings and during the hearing, Templeton failed to

acknowledge the fact that his Daubert motions are untimely.  Without any argument on

the matter, the court cannot find that good cause to modify the scheduling order exists.

Therefore, the court denies the motion as untimely.

Even if the court considered the substance of Templeton's motion, it would nevertheless deny it. As an initial matter, Templeton does not argue in his motion that Shelby is not qualified, and based on her curriculum vitae, Shelby is qualified to testify regarding trauma, repressed memories, and related therapeutic methods based on her education in psychology and counseling, professional experience as a psychologist, including in the area of trauma and child crisis, and related training and research. Instead, Templeton generally argues that while Shelby may be testifying regarding "correct scientific principle[s]," she "does not establish to a reasonable degree of certainty that [the scientific concept] most probably happened in this case." ECF No. 73-1 at 8; see id. at 7, 9.[3] For example, Templeton takes issue with Shelby's assertion that "[patients] may use fantasy, imagination, or speculation rather than memory to participate in therapy tasks," when Shelby does not show with reasonable certainty that Templeton actually used fantasy or imagination rather than memory during therapy. Id. at 7. Likewise, Shelby asserts that EMDR therapy undertaken by Templeton was "potentially leading, suggestive, and therefore not acceptable for the purpose of reviving recollection for legal testimony," and Templeton complains that Shelby did not establish that

---

[3] The court acknowledges that Templeton's objections to certain lines of testimony go beyond this general argument. For example, Shelby asserts in her report that EMDR therapy "is not acceptable for the purpose of reviving recollection for legal testimony," and Templeton argues that such an assertion calls for a legal conclusion. ECF No. 74-1 at 9. These line-by-line objections to testimony are more appropriately addressed at trial than in a motion in limine, and the court defers consideration of the same until trial, assuming timely objections are made during the course of testimony. See, e.g., Rybas v. Riverview Hotel Corp., 2015 WL 10096189, at *7 (D. Md. Jan. 15, 2015) (noting that "the line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern" and deferring consideration of challenge to testimony raised in motion limine until trial).

Templeton's memories <u>most probably</u> derived from leading and suggestive EMDR. <u>Id.</u> at 9.

In these arguments, Templeton overstates the extent to which an expert must apply her testimony to the facts of the case. Shelby's testimony must only be "sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute." <u>Daubert</u>, 509 U.S. at 591 (internal citation omitted). Shelby's testimony regarding how recovery of traumatic memories can be susceptible to influence is sufficiently tied to the facts of the case, namely the credibility of Templeton's claims of sexual abuse based on memories he recovered some thirty years after the alleged abuse occurred. As the Seventh Circuit has explained, "Rule 702 does not require 'that an expert's opinion testimony be expressed in terms of a reasonable scientific certainty in order to be admissible . . . . [A]n expert's lack of absolute certainty goes to the weight of that testimony, not its admissibility.'" <u>Stutzman v. CRST, Inc.</u>, 997 F.2d 291, 296 (7th Cir. 1993) (quoting <u>United States v. Cyphers</u>, 553 F.2d 1064, 1072–73 (7th Cir. 1977)). Accordingly, Shelby need not establish that Templeton succumbed to these influences "with reasonable certainty," or even that he "most probably" succumbed to them. <u>See</u> <u>Holbrook v. Lykes Bros. S.S. Co. Inc.</u>, 80 F.3d 777, 785 (3rd Cir. 1996) (holding that medical experts are not required to "recite the talismanic phrase" that their opinions are given "to a reasonable degree of medical certainty"). These are questions for the jury to decide. Shelby's testimony will aid the jury in making that decision, and therefore the court will not exclude or limit Shelby's testimony on this ground.

### 3. James I. Hudson, M.D., and Elizabeth F. Loftus, Ph.D.

Templeton additionally moves to exclude the expert testimony of Hudson and Loftus, both of whom generally testify that repressed memory is not scientifically valid and that Templeton does not have a scientific basis to claim that he repressed and recovered the memory of DuMouchel's sexual abuse. As explained above, the motion is untimely. And again, it also fails on substantive grounds. Templeton only makes one argument to exclude the testimony of Hudson and Loftus: that their testimony is inconsistent with the South Carolina Supreme Court's decision in Moriarty, 534 S.E.2d at 675. Templeton appeals to the court's holding in Moriarty that "repressed memories of sexual abuse can exist and a plaintiff may attempt to recover damages when those memories are triggered and remembered. The condition is known as dissociative amnesia. A cause of action based on such a theory is valid in South Carolina." Id. Templeton uses this holding in Moriarty to attack the qualifications, reliability, and relevance of Holmes and Loftus's expert testimony.

Templeton vaguely argues that Holmes and Loftus are unqualified because "their experience, training and knowledge is outside the scope of the parameters established by the South Carolina Supreme Court [in Moriarty]." ECF No. 74-1 at 9. According to Templeton, after the Moriarty decision, Holmes and Loftus cannot be qualified to testify that repressed memory is not scientifically valid or accepted by the scientific community. Templeton conflates the question of an expert's qualification to testify on the subject of repressed memory with the reliability of that expert's testimony on the subject. Where the proposed expert's qualifications are challenged, "the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered" to be properly

excluded.  Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).  A cursory review of

Holmes and Loftus's extensive education, experience, and training in the areas of

psychiatry, psychology, and memory reveals that both are indeed qualified to testify as

experts on the subject of repressed memory, memory studies, and common memory

disturbances in victims of trauma.  The court rejects Templeton's contention to the

contrary.

The Moriarty decision similarly does not render Hudson and Loftus's testimony

unreliable.  Moriarty does not stand for the proposition that repressed memory is a

scientifically uncontroverted reality.  In fact, the court in Moriarty directly acknowledged

"the disagreement among the psychological and medical communities about the validity

of repressed memory syndrome . . . ."  Moriarty, 534 S.E.2d at 680.  As such, Moriarty

does not support Templeton's argument that expert testimony must be excluded simply

because it challenges the validity of memory repression.  As is apparent from both

parties' motions to exclude experts on memory repression, the effect of trauma on

memory is the focus of heated controversy within the scientific community, and both

Templeton's and the Bishop's experts espouse views that appear to have some support

among scientists engaged in that debate.  Daubert principles support admission of a

scientific theory if it is within "the range where experts might reasonably differ."  Kumho

Tire, 526 U.S. at 153 (citing Daubert, 509 U.S. at 596).  In other words, where legitimate

disagreement exists within the scientific community, it is for the jury, not the judge, "to

determine which of several competing scientific theories has the best provenance."

Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998); see

also Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  Rule 702 does not require exclusion of all but the most scientifically supported view, and it clearly contemplates the admission of testimony by experts who have fundamental disagreements about the scientific principles at issue.  Indeed, admitting Templeton's expert testimony on memory repression while excluding the Bishop's would undermine the fact that reasonable experts appear to disagree on the topic.  Therefore, the court finds that the Moriarty decision does not render Loftus and Hudson's testimony unreliable.

Templeton's challenge to the relevancy of Loftus and Hudson's testimony is of the same vein.  Templeton argues that Loftus and Hudson's testimony is irrelevant to the extent it "abrogates, enlarges, and modifies the substantive law of South Carolina."  ECF No. 74-1 at 9.  As the court has already explained, the Moriarty decision did not irrefutably establish that memory repression is a scientific certainty; only that "repressed memories of sexual abuse can exist."  Moriarty, 534 S.E.2d at 682 ("We express no opinion . . . on the validity of repressed memory syndrome as it may apply in her case.").  As such, permitting Loftus and Hudson's testimony that tends to undermine the science of memory repression does not abrogate, enlarge, or modify the substantive law of South Carolina.  Therefore, the court finds that Loftus and Hudson's testimony is not irrelevant nor inadmissible under Moriarty.

### III.   CONCLUSION

For the foregoing reasons the court **GRANTS IN PART AND DENIES IN PART** the Bishop's motion to exclude and **DENIES** Templeton's motions to exclude.

**AND IT IS SO ORDERED.**

_____

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 5, 2021**
**Charleston, South Carolina**