**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| CHRIS TEMPLETON, ) | |
| ) | |
| Plaintiff, ) | No. 2:18-cv-02003-DCN |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| THE BISHOP OF CHARLESTON, a ) | |
| Corporation Sole, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant The Bishop of Charleston's (the "Bishop") motion for summary judgment, ECF No. 72. For the reasons set forth below, the court grants the motion in full.

## I. BACKGROUND

Plaintiff Chris Templeton ("Templeton") is an adult citizen and resident of Georgia who alleges that he was sexually abused as a child by a priest of the Bishop, Father Raymond DuMouchel ("DuMouchel"). According to Templeton, the sexual abuse occurred after he traveled to South Carolina with a priest of the Diocese of Savannah, Wayland Yoder Brown ("Brown"), who became notorious for his molestation of children. On July 20, 2018, Templeton filed the instant action against the Bishop, the corporate entity of the Roman Catholic Church in South Carolina. Templeton brings negligence and gross negligence causes of actions against the Bishop, including maintaining conditions dangerous to children, negligent supervision of DuMouchel, and breach of assumed duty. ECF No. 1, Compl.

1

On March 1, 2021, the Bishop filed the instant motion for summary judgment. ECF No. 72. On March 22, 2021, Templeton responded, ECF No. 80, and on March 29, 2021, the Bishop replied, ECF No. 87. On September 9, 2021, the court granted in part, held in abeyance in part, and ordered supplemental briefing on the motion (the "September Order"). ECF No. 101. On October 1, 2021, Templeton and the Bishop filed the requested supplemental briefings. ECF Nos. 102 & 103, respectively. As such, the remaining issues in the Bishop's motion for summary judgment are now ripe for the court's review.

## II.  STANDARD

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III. DISCUSSION

In its September Order, the court granted the Bishop's motion for summary judgment with respect to Templeton's negligent supervision and breach of assumed duty causes of action and held the motion in abeyance with respect to Templeton's cause of action for "Maintaining Conditions Dangerous to Children." See Compl. ¶¶ 29–39. The court found that Templeton's "Maintaining Conditions Dangerous to Children" cause of action sounded in premises liability, and because the parties did not present arguments in their summary judgment briefings under that framework, the court ordered supplemental briefing on the issue. Specifically, the court ordered supplemental briefing on:

> (1) Templeton's status or classification upon entering the Bishop's property; (2) the foreseeability of harm to Templeton based on Unterkoefler's statement that the diocese had a "nest of pedophiles," ECF No. 80-3 at 60; (3) whether Unterkoefler's "nest of pedophiles" statement is inadmissible hearsay or fits the requirements of a hearsay exception; and (4) if the harm to Templeton was foreseeable, the measures the Bishop was required to take to protect against that harm. In the supplemental briefing, the parties shall be bound by the court's findings in this order and should frame their arguments accordingly.

ECF No. 101 at 18. The court briefly recounts the law of premises liability in South Carolina and then applies the same to the case sub-judice.

To establish negligence in a premises liability action, a plaintiff must prove the following three elements: (1) a duty of care owed by the defendant to the plaintiff; (2) the defendant's breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty. See Hurst v. E. Coast Hockey League, Inc., 637 S.E.2d 560, 562 (S.C. 2006). The court must determine, as a matter of law,

whether the law recognizes a particular duty.  Id.  "If there is no duty, then the defendant in a negligence action is entitled to summary judgment as a matter of law."  Id.; see also Hopson v. Clary, 468 S.E.2d 305, 307 (S.C. Ct. App. 1996) ("If the evidence as a whole is susceptible to only one reasonable inference, no jury issue is created and [summary judgment] is properly granted.").

The nature and scope of a landowner's duty in a premises liability action, if any, is determined based upon the status or classification of the person injured at the time of his or her injury.  Sims v. Giles, 541 S.E.2d 857, 861 (S.C. Ct. App. 2001).  South Carolina recognizes four general classifications of persons present on the property of another: an "invitee," i.e., an invited (express or implied) business guest; a "licensee," i.e., a person not invited, but whose presence is suffered; a "trespasser," i.e., a person whose presence is neither invited nor suffered; or a child.  Id.  Different standards of care apply depending upon the classification of the person present.  Id.; see also Larimore v. Carolina Power & Light, 531 S.E.2d 535, 538 (S.C. Ct. App. 2000) ("The level of care owed is dependent upon the class of the person present.").  Thus, the Bishop's duty to protect Templeton from conditions on its property largely depends on whether Templeton was a trespasser, invitee, licensee, or child at the time of the incident.  See Landry v. Hilton Head Plantation Prop. Owners Ass'n, 452 S.E.2d 619, 621 (S.C. Ct. App. 1994); Singleton v. Sherer, 659 S.E.2d 196, 204 (S.C. Ct. App. 2008).

The Bishop argues that Templeton's premises liability claim fails because Templeton was a trespasser on the Bishop's premises at St. Anthony's Mission, where he was abused, such that it did not owe him a duty of care.  Templeton, on the other

hand, argues that he was either a licensee or invitee at the relevant time. The court agrees with Templeton that he was a licensee at the time of his entry to St. Anthony's Mission. Since Templeton was affiliated with the Bishop for religious purposes and entered its premises at the direction of the Bishop's priests, the court will not consider Templeton a trespasser at St. Anthony's Mission.[1] Additionally, Templeton cannot be considered an invitee as a matter of law. The basic distinction between a licensee and an invitee is that an invitee confers a benefit on the landowner. Crocker v. Barr, 409 S.E.2d 368 (S.C. 1991). Templeton has not alleged or provided any evidence that he conferred any benefit upon the Bishop via his presence on the premises. Therefore, at best, Templeton was a licensee.[2]

Under South Carolina jurisprudence, when a licensee enters onto the property of another, it is for his or her benefit and not that of the landowner. Sims, 343 S.C. at 720, 541 S.E.2d at 863. "Since a licensee is there for his own benefit, he can be said to accept the premises as they are and demand no greater safety than his host provides himself." Id. (alterations omitted). Accordingly, the landowner only owes a licensee a duty to (1) "discover him and avoid injury to him in carrying on activities upon the land"; and (2) "warn him of any concealed dangerous conditions or activities which are

---

[1] The court is mindful that DuMouchel and Brown's use of St. Anthony's Mission to abuse Templeton may be considered trespass because it was for a non-religious purpose and outside the scope of their employment. However, their subjective intent to abuse Templeton does not negate Templeton's permission to be on church premises nor does it negate the priests' implied authority to permit Templeton to be on the premises with them.

[2] Neither party argues that the court should classify Templeton as a child under the applicable premises liability framework, and the court agrees that the usual bases of liability for child trespassers, such as the attractive nuisance doctrine, do not apply in this case.

5

known to the possessor." Neil v. Byrum, 343 S.E.2d 615, 616 (S.C. 1986) (citations omitted). The duty owed to a licensee differs from the duty owed to an invitee "in that the [landowner] has no duty to search out and discover dangers or defects in the land or to otherwise make the premises safe for a licensee." Singleton, 659 S.E.2d at 204.

      As the court explained in its September Order, DuMouchel and Brown acted outside of the scope of their employment by molesting Templeton and, accordingly, their actions cannot be attributed to the Bishop. See ECF No. 101 at 11 ("Of course, the alleged sexual abuse of Templeton falls outside of the scope of DuMouchel's agency, as it no way furthered the Bishop's business."). As such, Templeton's alleged injuries resulted from the activities of a third party—not the Bishop—on the Bishop's premises. Templeton has failed to allege or provide any evidence that the Bishop breached its duty to use reasonable care to discover Templeton and to avoid injuring him in carrying out its own activities upon the land. Therefore, Templeton cannot succeed on a premises liability claim based on the theory that the Bishop breached its first duty owed to Templeton as a licensee.

      Moreover, Templeton has not created a genuine issue of material fact that the Bishop breached its second duty owed to him as a licensee—the duty to warn of known dangerous conditions on its premises or changes in conditions that it should reasonably be expected to discover. Specifically, Templeton has not provided any evidence that the Bishop knew of any dangerous condition or activities on its premises. Templeton alleges that DuMouchel was a "dangerous instrumentality" at St. Anthony's Mission. Compl. ¶ 36. In granting summary judgment on Templeton's negligent supervision claim in its September Order, the court explained in detail that the Bishop did not know

and should not have known of the risk that DuMouchel personally posed to Templeton as a matter of law. ECF No. 101 at 8–10. That finding applies with equal force to Templeton's premises liability claim. Because the Bishop did not know and was not reasonably expected to discover that DuMouchel would molest Templeton as a matter of law, Templeton cannot establish that the Bishop breached its duty to warn Templeton about the risk of molestation by DuMouchel at St. Anthony's Mission. In other words, Templeton cannot succeed on his premises liability claim on the theory that the Bishop breached its duty to Templeton by failing to warn him of the known dangerous condition presented by DuMouchel's presence on their premises.[3]

---

[3] In any event, the court is not convinced that DuMouchel is the type of "dangerous condition" contemplated under South Carolina premises liability law. For example, in Roe v. Bibby, the South Carolina Court of Appeals found that a wife did not have a duty to warn licensees in her home of the risk of molestation by her husband. 763 S.E.2d 645, 651 (S.C. Ct. App. 2014). Although the court's holding was based on its finding that the wife did not have sufficient knowledge of her husband's abuse in the home, the court expressed concern that finding liability for failure to warn under a premises liability theory in the case "could potentially subject homeowners to liability for failure to warn licensees of prior bad conduct, including conduct of a criminal nature, of any persons on the premises." Id. The court shares the South Carolina Supreme Court's concern that requiring a landowner to warn licensees of prior criminal acts of any person on its premises risks the concept of premises liability sweeping too broadly. The instant case is even less suited for analysis under a premises liability framework than Roe because the alleged risk of molestation was not tied to Templeton's entry on the Bishop's premises. In the usual premises liability case, a plaintiff's injury results from entering the premises and thereby facing a dangerous condition on those premises, such as slippery or damaged floors, poor lighting, or toxic chemicals. As alleged, Templeton did not enter St. Anthony's Mission of his own accord and unwittingly confront a dangerous condition thereon by which he was injured. Rather, on the occasions at issue, Templeton encountered DuMouchel, the supposedly "dangerous condition", before he entered St. Anthony's Mission and only arrived at St. Anthony's Mission because DuMouchel elected to transport Templeton there. It appears to the court, then, that DuMouchel was not a dangerous condition of the St. Anthony's Mission premises—as alleged, he was dangerous anywhere. Therefore, the Bishop was not required under South Carolina premises law to warn Templeton of the risk of molestation upon entry at St. Anthony's Mission. Because Templeton was already under DuMouchel's control before arriving at St. Anthony's Mission, Templeton could

To the extent Templeton alleges that the Bishop had a duty to warn Templeton of a more general risk of sexual abuse—not just the risk posed by DuMouchel—at its St. Anthony's Mission premises, the court likewise finds that he has failed to create a genuine issue of material fact on the issue. Templeton provides only a single piece of evidence that the Bishop had knowledge of a more general risk of sexual abuse by priests on its premises. Specifically, Father Timothy Watters ("Watters") testified that around 1986, Bishop Ernest Unterkoefler ("Unterkoefler"), who served as the Bishop of Charleston at the time, told him that there was a "nest of pedophiles in the diocese" but "Rome" would not allow him "to get rid of them." ECF No. 80-3, Watters Dep. at 60:16–20. The parties dispute whether this statement is hearsay or subject to the hearsay exemption for admission of party opponents under Federal Rule of Evidence 801(d)(2)(D). The court need not resolve the issue because, even if the statement were not hearsay and properly considered by the court, that evidence is insufficient to create a genuine issue of material fact as to whether the Bishop had knowledge of the dangerous condition—the presence of sexual predators—at St. Anthony's Mission. Unterkoefler's alleged statement suggests that he knew that some pedophiliac activity in the Dioecese was occurring but provides no information as to the source of that knowledge or the facts underlying it. It is entirely unclear to what extent Unterkoefler knew of pedophiliac activity in the diocese and, if he did, whether it was based on personal knowledge or hearsay. Moreover, neither Watters' testimony nor Unterkoefler's

---

not have avoided injury simply by declining to enter the Bishop's premises. The evidence suggests that Templeton would have suffered, and did on occasion suffer, the same injury regardless of whether DuMouchel and Brown took Templeton to St. Anthony's Mission or another location.

statement itself provides insight into whether Unterkoefler suspected any specific individuals in the diocese of being pedophiles other than "Fred Hopwood" ("Hopwood"). Watters Dep. 60:21–24. Watters testified that, after Unterkoefler stated that there was a "nest of pedophiles in the diocese", Unterkoefler mentioned "that he had talked to Fred Hopwood and told him to keep his hands off altar boys." Id. at 60:21–24. Templeton has not presented any evidence or argument connecting Hopwood to Brown, DuMouchel, St. Anthony's Mission, or Templeton's cause of action. Therefore, Unterkoefler's identification of Hopwood as a suspected pedophile cannot be construed as evidence that the Bishop knew of a dangerous condition of pedophiles at St. Anthony's Mission. To the extent Unterkoefler's statement suggests that he suspected that pedophiles other than Hopwood operated within the diocese, it is unclear how many priests he suspected, where those priests were based, where the alleged pedophiliac activity took place, who the victims were, how prevalent the criminal activity at issue was, or even how confident Unterkoefler was that the alleged criminal activity was occurring. Because Unterkoefler is deceased and therefore unavailable for examination by the parties, these facts cannot be uncovered. Moreover, Watters testified that he does not remember the precise context in which Unterkoefler made his statement and does not have further information to elucidate that vague and loaded statement. Watters Dep. 60:6–61:5. As such, a jury would be left to speculate that Unterkoefler's comment regarding the general existence of pedophiliac activity in the diocese equated to knowledge that such activity was occurring and a dangerous condition at St. Anthony's Mission. Such speculation would be an improper basis for a jury to find by a preponderance of the evidence that the Bishop had knowledge of the danger of

molestation at St. Anthony's Mission.  Moreover, the court finds that the unfairly prejudicial effect of Unterkoefler's statement, given the numerous uncertainties surrounding it, substantially outweighs the minimal benefit of the statement in proving the Bishop's knowledge of dangerous activities at St. Anthony's Mission.  Therefore, even if the statement were not hearsay, the court would still exclude it under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice.  Because the statement would be inadmissible at trial, Templeton cannot rely on it to survive summary judgment.

Templeton's evidence is insufficient to create a genuine issue of material fact on any theory of his premises liability claim, and the court therefore grants summary judgment on that claim in the Bishop's favor.  Because no other causes of action remain outstanding after this order, the court grants summary judgment in the Bishop's favor on all claims and closes the case.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 6, 2021**
**Charleston, South Carolina**